The argument today, 23-73, Webuild versus Republic of Panama. Mr. Pham, you've reserved two minutes for rebuttal. Thank you, Your Honors. And may it please the Court. My name is Hansel Pham, appearing on behalf of Plaintiff Webuild S.P.A. In Z.F. Automotive, the Supreme Court held that discovery under Section 1782 is available in a proceeding before a tribunal imbued with governmental authority by one or more sovereign states. Despite being invited to do so, the Supreme Court did not foreclose Section 1782 discovery in aid of ICSID arbitrations, like the arbitration ongoing between Webuild and Panama. The Supreme Court acknowledged that governmental and intergovernmental bodies may take many forms and expressly declined to prescribe a test for what constitutes governmental authority. Instead, the Supreme Court engaged in a fact-specific analysis that looked for indications of state intent and, more generally, a higher level of government involvement. For ICSID tribunals, the evidence of government intent and involvement is best expressed in the ICSID Convention, an intergovernmental treaty signed by the 157 member states of ICSID. The ICSID Convention best exemplifies this higher level of government involvement through ICSID's self-contained regime for enforcing and annulling ICSID awards, turning first to enforcement. The ICSID member states collectively conferred upon ICSID tribunals the authority to issue awards that are accorded the same legal effect as final judgments issued by their own national courts. Article 54 of the ICSID Convention provides that each contracting state shall enforce an ICSID award as if... ...the district court, in considering, did not consider enforcement and annulment. Are you arguing that we should send it back to the district court to consider those and reach a new decision, or are you saying that that is something that is sufficient for us to decide on our own This goes beyond the cases the Supreme Court and others have said do not allow because... Which is your argument? Our argument is that this court can look at the question of the appropriateness of ICSID arbitration for Section 1782 and importantly, it can look at the impact of the way that the ICSID Convention treats enforcement in a way that neither the district court below nor the district court in Alpine did. What's so important about that is that Article 54 of the ICSID Convention, sorry, in addition to Article 54 of the ICSID Convention, the U.S. legislation implementing the ICSID Convention in 22 U.S.C. 1658 provides that ICSID awards shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction. So they're final, there's finality clearly here, but how does finality imbue government authority? This goes well beyond simply the question of finality. Something that parties could agree to by agreeing to a certain level of review. Here, what the member states have done is provide in a treaty that they will treat the awards of these ICSID tribunals with the same respect and give the same treatment to those awards as they do for their national court judgments. That decision to expressly equate the awards of ICSID tribunals and the judgments of national courts is highly significant. Is it different than how the FAA treats arbitration awards? Yes, the FAA does not treat the arbitration awards in the same way, and that is true both for commercial and ad hoc tribunals as well under the New York Convention. They are not treated as equivalent to national court judgments. So providing Section 1782 assistance to ICSID tribunals promotes comedy and respect for the ICSID member states that impose on themselves that obligation to treat the awards of ICSID tribunals like national court judgments. As another example of governmental authority, ICSID tribunals have been entrusted by the ICSID member states to issue awards that are not subject to annulment by national courts. Can I just go back to enforcement? What would be another option for treating them differently than other court judgments? What might that look like? Do you have something to compare it to? I think you can see this in the arbitral rules of UNCITROL, which is something that came up before the Supreme Court in ZF, or in various other arbitral rules for commercial arbitration, such as the International Chamber of Commerce. Those arbitral rules don't have the power to have sovereign states agree to treat awards like national court judgments. They simply don't have the authority to do that. So then how are they treated? What happens then? What's another model for how to treat them? The way it must be treated is that the award must be taken to a court to be recognized as a judgment under various treaties and conventions. Not treated immediately as a foreign court judgment. Not given full faith and credit. And as I'll talk about with respect to annulment, the grounds are thus quite different. Not only is the awards of ICSID tribunals subject to much less review, because the courts are simply asked to look at their own jurisdiction, which is mandatory, authenticity, and that's really it. You don't look at the questions that courts would look at in enforcing arbitral awards in other contexts, such as whether there was an agreement to arbitrate, whether there was due process, or whether there was some violation of public policy. And that really does lead to the special system for annulment under ICSID. You do not take these ICSID awards and go to courts for annulment. Instead, the award of an ICSID tribunal can only be annulled within ICSID by an annulment committee comprised exclusively of individuals designated by the Member States or by the ICSID Chairman of the Administrative Council. This self-contained annulment mechanism is unique to ICSID and stands in contrast to the ability of national courts to annul commercial and ad hoc arbitral awards. By transferring that annulment function to an external adjudicatory body, the ICSID Member States demonstrate their respect for the awards of ICSID tribunals and provide another example of how governmental authority is conveyed throughout the overarching framework of the ICSID Convention System. Finally, with the significant deference given to ICSID tribunals through the enforcement and annulment regimes, it is all the more essential that ICSID tribunals and parties have access to evidence needed for effective decision-making. I see I've run out of time. I'll reserve for rebuttal. Okay. Thank you, Counsel. Mr. Lonergan. I'm sorry. Did I have five minutes, or was that eight minutes? That was eight. It was quick. Thank you. May it please the Court, Sam Lonergan for Interested Party Appellee, the Republic of Panama. The Supreme Court's unanimous holding in ZF Auto is dispositive of WeBuild's appeal. Judge Kaplan correctly held that neither Italy nor Panama intended to imbue the WeBuild Tribunal with governmental authority and therefore correctly held that the WeBuild Tribunal is neither a foreign nor international tribunal under its So obviously lots of factors line up, but I think Counsel on the other side jumped to enforcement and annulment because we don't have, I think, discussion of that in ZF Automotive. Is that right? Your Honor, Judge Kaplan addressed that in this case. Frankly, these arguments were raised before him in WeBuild's briefing, and Judge Kaplan rejected them as without merit and for good reason. And now we're on appeal. And for good reason. There's no logical relationship between the annulment and enforcement provisions that WeBuild points to and the idea that somehow an ICSID tribunal or the WeBuild tribunal was imbued with governmental authority. Frankly, the purpose of the enforcement provisions and the annulment provisions were always to create a sense of finality. This comes from Aaron Brocious, the primary drafter of the ICSID convention. The whole purpose behind ICSID was to create a neutral arbitral body in order to encourage international investment. To create something that is a state-sponsored body would have run contrary to the purpose of ICSID from the very beginning. The Supreme Court addressed the enforcement argument in ZF Auto, and I'm quoting, quote, but private entities do not become governmental because laws govern them and courts enforce their contracts. That would erase any distinction between private and governmental adjudicative bodies. End of quote. This is consistent with this court's finding in Guo, where you addressed a Chinese arbitral body that had initially been created by the government of China. And there, the Chinese courts had only limited review powers over that Chinese body's awards. And this court held similarly to what the Supreme Court held in ZF Auto, which was the enforcement provisions in a limited court review does not transfer what this court held to be a private arbitral body into a public arbitral body. Judge Kaplan also correctly held that all of the factors that the Supreme Court explicitly reviewed in ZF Auto were mirrored here. One, there was no pre-existing WeBuild Tribunal. That was formed solely in order to address the party's dispute. Two, the tribunal derives its authority from party consent. Panama consented to the tribunal in its bilateral investment treaty with Italy, and WeBuild consented to it by taking Panama up on that offer and initiating arbitration. The WeBuild Tribunal was not created by the bilateral investment treaty, nor was it created by the ICSID convention. The bilateral investment treaty contained three options. One was a competent Panamanian court. One was an unstructured tribunal, and one was an ICSID tribunal. WeBuild chose the ICSID tribunal, which meant that there was a set of rules that the parties would follow in order to form a tribunal. Judge Kaplan correctly held that the WeBuild Tribunal was independent of and not affiliated with either Panama or Italy. All of the members of the WeBuild Tribunal were selected by the parties, and none of the members of the tribunal are from Panama or Italy. Judge Kaplan correctly held that the WeBuild Tribunal receives no government funding. Instead, it is funded exclusively by the parties to the tribunal. And Judge Kaplan held that for all material purposes, ICSID proceedings are confidential. Both the hearings and the arbitral award remain confidential, but for the parties agreeing otherwise. If the court has no further questions, I'll just close with ZF Auto is dispositive of WeBuild's appeal. Judge Kaplan correctly applied all of the factors that the Supreme Court explicitly considered in ZF Auto, and correctly concluded that neither Panama nor Italy intended to imbue the WeBuild Tribunal with governmental authority. And I'll just add that the Supreme Court did reference that the unsatural rules controlled the arbitral body at issue in ZF Auto, but it never went into the rules because it saw no evidence there of those rules imbuing governmental authority on the tribunal at issue there. Similarly, the ICSID rules do not imbue any governmental authority on the tribunal at issue here. Thank you, counsel. Ms. Mittle. May it please the court, Urgea Mittle for the United States. As you've just heard, an investor state arbitral tribunal convened pursuant to the ICSID convention is not an international tribunal under Section 1782. As your honor identified, and as counsel Frappoli has identified, a number of factors laid out in ZF Automotive apply exactly the same way here as they did in ZF Automotive. As to enforcement and annulment, there's no meaningful reason to depart from the holding of ZF Automotive here. And one of the reasons the Supreme Court didn't have need to get into those as key factors for determining whether a particular body is an international tribunal when it's an investor state arbitral panel is because there's no meaningful difference between how most investor state arbitral panels approach enforcement and annulment and how enforcement and annulment proceed in the purely private arbitration context. So if we start with enforcement, in the FAA context under 9 U.S.C. Section 9, parties take their arbitral awards to the court here in the United States. They get them confirmed, and they become court orders and judgments that can be executed. As counsel Frappoli has identified, the same sort of finality, purpose, and motivation is imbued in the ICSID convention, but the procedures for enforcing the arbitral awards under the ICSID convention are largely the same as in the purely private context where the Supreme Court already said there's no exercise of government authority. Same for annulment. There are internal review processes for purely private arbitrations. In the United States, we're familiar with the JAMS and AAA procedures that parties can agree to internal review mechanisms. Those internal review mechanisms don't transform those purely private arbitration bodies into bodies that are imbued with sovereign authority in any way. In the investor state context, we see- So that there's no reason for treating it as if it were a court thing rather than an arbitration decision of the sort we've all done, right? That's right, Your Honor. In all key respects and all the key factors and axes that the Supreme Court laid out in ZF Automotive, this investor state tribunal is just like the ad hoc investor state tribunal under the UNCTRA rules. It is essentially a private dispute between parties, in this case a foreign investor in a foreign state. There's no reason to read Section 1782 as covering this kind of a dispute. Doing so would transform federal district courts into essentially the discovery arms of purely private foreign disputes. Parties have agreed to resolve these disputes and have them adjudicated in essentially private form. And one final point on the annulment. We explained in our brief that even under the New York Convention, which is one of the primary conventions governing investor state arbitration, there are very limited review procedures even when awards are taken to court for review. And those aren't grounds for substantive review. The grounds that courts review those kinds of arbitral awards are for essentially what are due process violations, gross malfeasance, corruption on the part of the arbitrators, bias, departure from key procedural rules. Is there comparable review following an exit? There's no comparable review in a court of a state, Your Honor, but there is within the exit procedures. And there's no reason to give that small difference to mean that this is an international tribunal, something that's exercising governmental authority. I think you could say that is an indication of government authority, but in light of all of the other factors that line up with ZF Automotive, it isn't significant. Or you could say it's not an indicator of governmental authority. Which do you say? It's not an indication of government authority. I mean, courts, even under the FAA, have the authority to review arbitrations that emerge from purely private arbitrations on very similar grounds. And that doesn't mean that those arbitral awards that are handed down, for instance, by a JAMS mediator or a AAA mediator are imbued with government authority. The grounds for annulment and where that annulment procedure takes place in this context, just as in the FAA context, are not indications of government authority. And for those reasons, we'd ask the court to affirm. Thank you, counsel. Thank you. Mr. Pham, you have two minutes. Three points, Your Honor. First, in terms of enforcement, there was a reference to the ZF Automotive discussion about enforcement. If you look at that provision, it was really about the private commercial arbitrations and the fact that there may be some national courts that look at enforcing arbitration, but it was not about the enforcement of arbitral awards. The ZF court had no reason to talk about that because you didn't have the special, unique features of ICSID enforcement. There was just no occasion for the court to address it, and that is not a relevant reference for this court. With respect to what the U.S. government said about annulment or internal review, there was a reference both in the briefs and today about internal review in certain institutions like jams. If the court looks closely, that's about interpretation or revision. It is not the same feature or mechanism as annulment. At the end of the day, that award, after interpretation or revision, does go to a court in the jams context, in the commercial context. That's simply not true for ICSID cases and ICSID awards. They do not go to courts for annulment. It's a unique feature and is an evidence of the transfer of governmental authority. Finally, there was a reference by the appellees to the UNCTAD rules, and here this shows the difference between ICSID arbitration and the ad hoc arbitration that ZF was looking at. First of all, recall that the ZF court found that ad hoc arbitration could be imbued with governmental authority. They did not rule that out, and they found that ad hoc arbitration under UNCTAD rules presented a harder question. It is not a hard question for ICSID arbitration. UNCTAD rules does not have an arbitration that is connected to a permanent institution formed and funded by sovereign governments. It does not have a double-layered jurisdictional requirement requiring that the ICSID convention come into play and look at the intentions of the ICSID member states. And most importantly, UNCTAD arbitration does not have that unique enforcement and annulment regime that ICSID has that specifically equates the awards of ICSID tribunals with the judgments of foreign courts. With that, we respectfully request. Thank you. Unless there's any questions. Thank you, counsel. All right. Matter is submitted. We reserve judgment.